IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK McINTIRE,

        Plaintiff,

vs.                          Case No. 11-1178-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial
gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

     The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

                                3

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 6, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 9-18). Plaintiff alleges that he has been disabled since February 20, 2007 (R. at 9). Plaintiff is insured for disability insurance benefits through June 30, 2012 (R. at 11). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since February 20, 2007, his alleged onset date (R. at 11). At step two, the ALJ found that plaintiff had the following severe

impairments: coronary artery disease with a history of myocardial
infarction with stenting and pacemaker placements, chronic
obstructive pulmonary disease, cervicalgia, low back pain
syndrome, carpal tunnel syndrome with a history of release
surgery, history of brain tumor and alcohol abuse in reported
remission (R. at 12).  At step three, the ALJ determined that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 13-14).  After determining plaintiff's RFC (R. at 14), the
ALJ determined at step four that plaintiff was unable to perform
past relevant work (R. at 16).  At step five, the ALJ determined
that other jobs exist in significant numbers in the national
economy that plaintiff could perform (R. at 17-18).  Therefore,
the ALJ concluded that plaintiff was not disabled (R. at 18).

**III.  Did the ALJ err in his finding that plaintiff's impairments
do not meet or equal listed impairment 4.02?**

Plaintiff has the burden to present evidence establishing
that his impairments meet or equal a listed impairment.  Fischer-
Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  In order
for the plaintiff to show that his impairments match a listing,
plaintiff must meet "*all*" of the criteria of the listed
impairment.  An impairment that manifests only some of those
criteria, no matter how severely, does not qualify.  Sullivan v.
Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in
original).

5

Plaintiff argues that his impairments meet or equal listed impairment 4.02.  That listed impairment is as follows:

> 4.02 *Chronic heart failure* while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
>    1. Systolic failure (see 4.00D1a(I)), with left ventricular end diastolic dimensions greater than 6.0 cm **or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)**; or
>
>    2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
>    1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
>    2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see

6

4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R., Pt. 404, Subpt. P., App. 1 (2011 at 485-486, emphasis added).

In his decision, the ALJ made the following step three findings applicable to this listed impairment:

There are no medical findings that precisely meet or equal the criteria of [a listed impairment]. The claimant's coronary artery disease is assessed under Medical Listing 4.02. His heart disease does not meet or medically equal this listing as his ejection fraction has not been 30% or less during a period of stability.

7

(R. at 13).  The medical records show the following ejection
fraction readings:

| date | ejection fraction (EF) score |
|------|------------------------------|
| July 30, 2007 | 35-38% (R. at 371) |
| Sept. 7, 2007 | 36-38% (R. at 474) |
|  | 40-42% (R. at 476) |
| Sept. 17, 2007 | 32-38%/35-38% |
|  | (R. at 515-516)[1] |
| July 18, 2008 | 39-46% |
|  | (R. at 638-639, 841) |
| Feb. 23, 2009 | 40% or more |
|  | (R. at 819) |

The medical record clearly supports the finding of the ALJ that
plaintiff's EF score has been above 30% during periods of
stability.

Despite the above finding by the ALJ, plaintiff argues that
his listed impairment nonetheless equals listed impairment 4.02.
Medical equivalence is defined in 20 C.F.R. § 404.1526(a,b)(2011
at 377-378).  The ALJ stated that there are no medical findings
that precisely meet or equal the criteria of a listed impairment
(R. at 13).  Even though plaintiff has the burden of proving that
his impairments meet or equal a listed impairment, plaintiff
cites to no medical opinion evidence or other evidence that
clearly establishes that plaintiff's impairments equal listed

---

[1]The report initially indicated an EF score of 32-38%; later it indicated a EF score of 35-38% (R. at 515-516).

8

impairment 4.02 (chronic heart failure).  Furthermore,
plaintiff's own treating physician, Dr. Geitz, filled out a
medical assessment form for congestive heart failure.  On that
form, Dr. Geitz did not indicate that plaintiff had any
restrictions or limitations (R. at 835-837).  Plaintiff even
admitted in his brief that Dr. Geitz opined that plaintiff had no
restrictions (Doc. 11 at 12).  On these facts, the court finds
that substantial evidence supports the ALJ's finding that
plaintiff's impairments do not either meet or equal listed
impairment 4.02.

**IV.  Are the ALJ's RFC findings supported by substantial evidence?**

The ALJ made the following RFC findings in this case:

> ...claimant has the residual functional
> capacity to perform a range of light work as
> defined in 20 CFR 404.1567(b) and 416.967(b),
> which demands the occasional lifting up to 20
> pounds and the frequent lifting/carrying up
> to 10 pounds; standing or walking 6 hours out
> of an 8 hour workday and sitting 6 hours out
> of an 8 hour workday with alternating sitting
> and standing every 30 minutes and no overhead
> reaching.  In addition, the claimant should
> have no significant interaction with the
> public.

(R. at 14).  According to SSR 96-8p, the RFC assessment "must
include a narrative discussion describing how the evidence
supports each conclusion, citing specific medical facts...and
nonmedical evidence."  The ALJ must explain how any material
inconsistencies or ambiguities in the evidence in the case record

9

were considered and resolved.   The RFC assessment must always
consider and address medical source opinions.   If the RFC
assessment conflicts with an opinion from a medical source, the
ALJ must explain why the opinion was not adopted.   SSR 96-8p,
1996 WL 374184 at *7.   SSR rulings are binding on an ALJ.   20
C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9,
110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v.
Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).   When the ALJ
fails to provide a narrative discussion describing how the
evidence supports each conclusion, citing to specific medical
facts and nonmedical evidence, the court will conclude that his
RFC conclusions are not supported by substantial evidence.   <u>See
Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July
28, 2003).   The ALJ's decision must be sufficiently articulated
so that it is capable of meaningful review; the ALJ is charged
with carefully considering all of the relevant evidence and
linking his findings to specific evidence.   <u>Spicer v. Barnhart</u>,
64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).   It is
insufficient for the ALJ to only generally discuss the evidence,
but fail to relate that evidence to his conclusions.   <u>Cruse v.
U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th
Cir. 1995).   When the ALJ has failed to comply with SSR 96-8p
because he has not linked his RFC determination with specific
evidence in the record, the court cannot adequately assess

10

whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ accorded "controlling" weight to the opinion of Dr. Geitz, plaintiff's treating physician (R. at 16). Dr. Geitz did not impose any restrictions on plaintiff (R. at 830-837). The ALJ also noted a consultative examination by Dr. Patterson (R. at 15, 406-412). Dr. Patterson stated that plaintiff had no acute physical limitations at this time, but had a mild limitation in balance, and a moderate limitation in exertional activity (R. at 412). The ALJ gave "some" weight to a state agency physical RFC assessment (R. at 16) by Dr. Ronald Crow, who opined that plaintiff had exertional limitations consistent with sedentary work (R. at 417), but had no other limitations (R. at 418-423). The ALJ indicated that the RFC in his decision is less limiting based upon additional medical evidence of record and testimony (R. at 16).

The ALJ, in weighing the evidence, can give either controlling or greater weight to the opinion of a treatment provider. A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not

inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).

    However, even though the ALJ gave greater or controlling weight to the opinions of Dr. Geitz, the ALJ nonetheless included some limitations in plaintiff's RFC.  His explanation for those limitations is as follows:

> Due to the combination of the claimant's impairments, it is reasonable to conclude that the claimant is limited to the occasional lifting up to 20 pounds and the frequent lifting/carrying up to 10 pounds; standing or walking 6 hours out of an 8 hour workday and sitting 6 hours out of an 8 hour workday.
>
> The claimant testified that he has back pain that starts in his lower back and goes down his right leg.  He testified that he has

problems sitting and standing for very long
at a time.  A lumber MRI showed some minor
disk bulging in the lower lumbar levels.
Physical examination on November 17, 2008
showed good range of motion through the upper
and lower extremities.  Straight leg raising
was negative bilaterally in the lower
extremities and there was no numbness or
weakness noted throughout the upper or lower
extremities (Exhibit 29F/29).  Although the
claimant's doctor did not impose any
restrictions due to back pain (Exhibit
29F/14[report of Dr. Geitz]), it is
reasonable to conclude that the claimant must
alternate sitting and standing every 30
minutes.

The claimant has a long history of bilateral
hand numbness and tingling in his fingers and
has been diagnosed with bilateral carpal
tunnel syndrome. (Exhibit 14F/17) The
claimant testified that he has had carpal
tunnel surgery on his left hand in May 2008
and he is left handed.  The claimant also
testified that he has pain in both shoulders
and cannot left his arms above his shoulder.
Consultative examiner Dr. Paterson found mild
decreased range of motion with flexion of the
cervical spine. (Exhibit 6F) Due to pain in
his shoulders, it is reasonable to conclude
that the claimant should not perform overhead
reaching.

The record reflects that the claimant does
have chest pain with anger (Exhibit 29F/2,
18).  He testified that since his heart
attack, he does not get along well with
others and people aggravate him.  Thus, the
evidence supports a finding that the claimant
should have no significant interaction with
the general public.[2]

---

[2]Although the ALJ did not mention the mental RFC assessment by Brad Williams, Mr.
Williams opined that plaintiff could perform work where interpersonal contact is incidental to the
work performed (R. at 460).  This opinion is therefore consistent with the ALJ's finding that
plaintiff should have no significant interaction with the general public (R. at 14).

(R. at 15–16).

   As noted above, the ALJ, in weighing the evidence, can give either controlling or greater weight to the opinion of a treatment provider.  Although the ALJ stated he gave "controlling" weight to the opinions of Dr. Geitz based on his treating relationship with the plaintiff, the ALJ nonetheless set forth, in some detail, his reasons for placing some limitations on plaintiff's ability to work, citing to medical evidence and plaintiff's testimony.  The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. <u>See</u> <u>Glenn v. Shalala</u>, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

   Given the fact that the ALJ was entitled to give greater weight to the opinions of Dr. Geitz, plaintiff's treating physician, who placed no limitations on the plaintiff, the court finds no error in the ALJ's decision to include some limitations based on the weight the ALJ accorded to other medical evidence and plaintiff's testimony, especially when any additional

14

limitations work to plaintiff's benefit.   See <u>Mounts v. Astrue</u>, 2012 WL 1609056 at *8 n.2 (10th Cir. May 9, 2012)(Claimant complained that there was no evidence to support limitation imposed by ALJ; court held that because this additional limitation worked to claimant's benefit, the court declined to address the argument).   The court finds that the ALJ's RFC findings are reasonable in light of the evidence in this case.[3]

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 25th day of June, 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[3]The court would note that even if plaintiff was limited to sedentary work, as opined by Dr. Crow, the vocational expert opined that plaintiff could perform the sedentary work of a bonder, semiconductor (R. at 17, 50-51).  The VE testified that 115,000 of these jobs exist in the nation.  The proper focus generally must be on jobs in the national, not regional, economy.  The Commissioner is not required to show that job opportunities exist within the local area. <u>Raymond v. Astrue</u>, 621 F.3d 1269, 1274 (10th Cir. 2009).  In addition to the sedentary job of bonder, semiconductor, identified above, the VE, after reviewing Exhibit 8F (Dr. Crow's physical RFC assessment, R. at 416-423) and Exhibit 12F (mental RFC assessment by Brad Williams, R. at 458-460)  also identified other sedentary jobs that plaintiff could perform, including touch up screener (98,000 jobs nationally), dowel inspector (32,000 nationally), and a loader, semiconductor (62,025 nationally) (R. at 52-55).  Thus, the VE identified 307,025 sedentary jobs available nationally that plaintiff could perform.  In the case of <u>Stokes v. Astrue</u>, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008), the court noted that the remaining two jobs identified that the claimant could perform had 152,000 positions available nationally.  The court held that they did not believe that any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers that plaintiff could perform.  There is no medical opinion evidence in this case that plaintiff could not perform sedentary work.